# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| B&B HARRIS MANAGEMENT, LLC, a Missouri limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>ILLINOIS GAMING BOARD; AARON JAFFE; LEE GOULD; MICHAEL HOLEWINSKI; and MARIBETH VANDER WEELE, in their official capacity as Members of the Illinois Gaming Board; and MARK OSTROWSKI, in his official capacity as Administrator of the Illinois Gaming Board,<br><br>Defendants. | Case No. 13-cv-3055<br><br>Judge John Z. Lee |

## MEMORANDUM OPINION AND ORDER

Plaintiff B&B Harris Management, LLC ("B&B"), a Missouri corporation with its principal place of business in Murphysboro, Illinois, was a licensed Video Gaming Terminal Operator in Illinois. Defendants, as Members and the Administrator of the Illinois Gaming Board (the "IGB"), declined to renew B&B's Terminal Operator License, and B&B filed the instant lawsuit, alleging that the IGB has deprived B&B of due process in denying its renewal request. One day after filing this case, B&B also filed a Complaint for Administrative Review in Illinois state court, seeking relief pursuant to Illinois' Administrative Review Law, 735 Ill. Comp. Stat. 3/01 *et seq*. Defendants have moved to dismiss this case pursuant to the doctrine of *Younger* abstention and Fed. R. Civ. P. 12(b)(6). As set forth below, the motion is granted.

**Background**

The IGB is responsible for administering and implementing the Illinois Video Gaming Act, 230 Ill. Comp. Stat. 40/1 *et seq.* (the "Act"). (Compl. ¶¶ 2, 3, 11.) The Act provides, in relevant part, that "Terminal Operators" may apply for and obtain licenses to operate Video Gaming Terminals ("VGT's") at "Licensed Establishments" as awarded by the IGB. (*Id.* ¶ 9.) *See* 230 Ill. Comp. Stat. 40/5. The IGB also is responsible for overseeing renewals and revocations of such licenses and has promulgated rules governing these processes. (*Id.* ¶¶ 11-19.)

Pursuant to the Illinois Administrative Code, the IGB "may only renew a license upon receipt of the applicable renewal fee and any renewal forms only if the licensee continues to meet all qualifications for licensure set forth in the [Video Gaming] Act" and the relevant sections of the Code. *See* 11 Ill. Admin. Code § 1800.570. The IGB has discretion to refuse to issue or renew a license to any applicant " (1) who is unqualified to perform the duties required of such applicant; (2) who fails to disclose or states falsely any information called for in the application; (3) who has been found guilty of a violation of [the Video Gaming] Act or whose prior gambling related license or application therefor has been suspended, restricted, revoked, or denied for just cause in any other state; or (4) for any other just cause." *See* 230 Ill. Comp. Stat. 10/9(d), (e); 230 Ill. Comp. Stat. 40/45.

In October 2010, B&B applied for a Terminal Operator License from the IGB, which it received in January 2012. (*Id.* ¶ 24.) The license was renewable annually. (*Id.* ¶ 27.) B&B took out two loans, in the amounts of $650,000.00 and $2,500,000.00, in order to install and operate VGTs in fourteen separate Licensed Establishments. (*Id.* ¶ 25.) As of April 2013, B&B had contracts to operate VGTs with seventy-eight establishments in Illinois. (*Id.* ¶ 26.)

In October 2012, B&B applied to the IGB to renew its Terminal Operator License. (*Id.* ¶ 28.) On February 25, 2013, however, the IGB issued a Notice of Denial of B&B's application, concluding that B&B had not met the requirements for licensing under the Act. (*Id.* ¶ 29.) Specifically, the Notice of Denial rejected the renewal of B&B's license on the grounds that B&B "owned, provided and/or continued to operate grey games in Illinois … both before and while it was licensed by the IGB as a Terminal Operator" and did so "for illegal gambling purposes" in violation of 230 Ill. Comp. Stat. 40/45(a). (Defs.' Mem., Ex. 1 at 2.)[1]

For its part, B&B contends that the Notice of Denial did not provide a sufficient basis for it to understand the reasons for denial in order to adequately respond. (Compl. ¶ 29.) On March 7, 2013, B&B filed a formal request for a hearing, but on March 20, 2013, the IGB denied that request, stating that B&B had not "establish[ed] a prima facie case as required by [] Section 1800.615 of the [IGB's Rules]." (*Id.* ¶¶ 30-31.) On March 20, 2013, the day of its issuance, the denial became a final order. (*Id.* ¶ 32.)

The gist of B&B's federal claims is that the IGB improperly treats terminal operators, who seek and are denied a renewal of a license, differently from terminal operators, whose licenses are revoked. (*Id.* ¶¶ 14-21.) Accordingly, B&B filed suit in this Court asserting that: it was denied due process because the IGB refused to provide B&B with a formal hearing (Count I); the IGB's policy of allowing hearings for revocation proceedings but not license renewal proceedings violated B&B's equal protection rights (Count II); and B&B is entitled to a state law

---

[1] Because the Notice of Denial is referenced in Paragraph 19 of the Complaint and is critical to the allegations contained therein, the Court can consider its contents on a motion to dismiss. *See Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) ("A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice."). Additionally, the Court can take judicial notice of the Notice of Denial as part of the administrative record. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997).

3

administrative proceeding to review the March 20, 2013, final order (Count III). The following day, B&B also filed a state court lawsuit seeking the identical relief.

## Discussion

Defendants contend that the Court must abstain from hearing B&B's complaint pursuant to the *Younger* abstention doctrine. *See Younger v. Harris*, 401 U.S. 37 (1971). This doctrine "generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 595 (7th Cir. 2007). The Supreme Court's holding in *Younger* "'was based partly on traditional principles of equity, but rested primarily on the even more vital consideration of comity.'" *Id.* (quoting *New Orleans Public Serv., Inc., v. Counsel of City of New Orleans*, 491 U.S. 350, 364 (1989)).

Although the *Younger* doctrine originated in the context of criminal prosecutions, it "'has since been expanded beyond criminal prosecutions to various civil proceedings in state court implicating important state interests.'" *Id.* at 595, n.5 (quotation omitted); *see SKS & Assocs., Inc. v. Dart*, 619 F.3d 674, 678 (7th Cir. 2010) ("The civil brand of *Younger* extends only to a federal suit filed by a party that is the target of state court or administrative proceedings in which the state's interests are so important that exercise of federal judicial power over those proceedings would disregard the comity between the states and federal government.") (citations omitted). Such civil proceedings include state administrative proceedings that are judicial in nature. *Id.*; *see Trust & Inv. Advisers, Inc. v. Hogsett*, 43 F.3d 290, 294-95 (7th Cir. 1994).

Accordingly, under *Younger*, "federal district courts must abstain from enjoining or otherwise interfering in ongoing state court proceedings that are (1) judicial in nature, (2) involve important state interests, and (3) provide an adequate opportunity to raise federal claims, as long

4

as (4) no exceptional circumstances exist that would make abstention inappropriate." *Stroman Realty, Inc. v. Martinez*, 505 F.3d 658, 662 (7th Cir. 2007); *see Majors v. Engelbrecht,* 149 F.3d 709, 711 (7th Cir. 1998) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Assoc.*, 457 U.S. 423, 429 (1982)).

Invoking *Younger*, Defendants argue that the Court must abstain because: the pending state complaint is judicial in nature and is ongoing; regulating the gaming industry in Illinois constitutes an important state interest; B&B can assert its constitutional grievances in the state proceeding; and there are no "extraordinary circumstances" that would preclude abstention. In response, B&B focuses its attention on the first prong of the *Younger* analysis, arguing that the state court proceeding is not "judicial in nature" because it does not involve an enforcement proceeding initiated by the state against B&B. Framing the argument in another way, B&B contends that the state court case is not "coercive" in nature and that B&B is not the "target" of the state proceeding, thereby alleviating any danger of this action disturbing the state court case. Finally, B&B asserts that the mere fact that the two proceedings are parallel does not automatically trigger abstention under *Younger* and that exceptional circumstances weigh against abstention. After consideration of the parties' arguments and the particular circumstances of this case, the Court concludes that abstention is proper under *Younger*.

We start with the premise that a state court administrative review action challenging a state administrative final decision – such as the state court action filed by B&B – is "judicial" in nature. *See Green v. Benden*, 281 F.3d 661, 666 (7th Cir. 2002) (a "state-court administrative review action . . . plainly is judicial in nature . . . ."). That said, B&B argues that the *Younger* doctrine is only triggered when state authorities have initiated enforcement proceedings against the federal plaintiff. Because the IGB "did not initiate any criminal, disciplinary, or other

5

enforcement proceeding against [it]," B&B contends that *Younger* abstention should not apply. (B&B Resp. at 4.) Along similar lines, B&B also argues that because it – and not the IGB – initiated the state proceedings, B&B's state court administrative review action is not "coercive" in nature, also making *Younger* inapplicable. (B&B Resp. 4-5.) B&B's arguments are unpersuasive for the reasons stated below.

First, as the Notice of Denial makes plain, the IGB's denial of B&B's renewal application was premised on B&B's purported violations of state laws, including the illegal operation of unlicensed terminals. (Defs.' Mem., Ex. 1 at 2.) Whether a nonrenewal of a gaming license by the IGB should be treated in all instances as a revocation of the same license for the purposes of *Younger* need not be decided here because, in this case, B&B concedes that the IGB's refusal to renew its license was "in all material respects" tantamount to a revocation of the license. (B&B Resp. 16.) As we previously have held, a state administrative proceeding to revoke a gaming license is judicial in nature. *See Emerald Casino, Inc. v. Jaffe*, No. 05 C 4077, 2005 WL 2649195, at *2 (N.D. Ill. Oct. 17, 2005); *see also Stroman Realty*, 505 F.3d at 662 (administrative proceeding challenging unlicensed brokerage activities satisfies *Younger*). It follows then that a state court administrative review action challenging such a determination is likewise judicial in nature for the purposes of *Younger*. *See Green*, 281 F.3d at 666.

The cases upon which B&B relies are inapposite. For example, in *Nader v. Keith*, 385 F.3d 729 (7th Cir. 2004), the plaintiff was a political candidate whose petition to be placed on the Presidential ballot was denied for failure to obtain the necessary petition signatures. Plaintiff sued both in federal and state court challenging the election board's determination, and defendants raised *Younger*. The Seventh Circuit refused to apply *Younger*, stating that "Nader is not accused of having violated any state law, and the state has not instituted any proceedings

against him; he merely is pursuing parallel remedies against the state's refusal to certify him as a candidate." *Id.* at 732. In contrast, here, the IGB has accused B&B of violating the Illinois Video Gaming Act and denied the renewal application on that basis, and B&B has admitted that the IGB's actions effectively constituted a revocation of its license.

In much the same way, *Beary Landscaping, Inc. v. Ludwig*, 479 F. Supp. 2d 857 (N.D. Ill. 2007), does not aid B&B. There, the plaintiffs filed suit against the Illinois Department of Labor seeking to enjoin it from enforcing the Illinois Prevailing Wage Act. But again, the state had not initiated any proceedings against the plaintiffs, and the plaintiffs themselves were not parties to the state administrative proceeding. *Id.* at 867. Accordingly, the *Beary* court found that the state administrative proceedings were "'remedial' as opposed to 'coercive' in nature." *Id.* (citation omitted.) In contrast, here, B&B is "the target of state court or administrative proceedings" at issue, raising the concerns of federal-state comity underlying *Younger*. *SKS*, 619 F.3d at 678. To say that the *Younger* doctrine should not apply simply because B&B was not formally named as a defendant in the state proceeding by the IGB, even though the basis for the state administrative decision was B&B's violation of state gaming law and the IGB will be asserting B&B's illegal behavior in state court, would elevate form over substance and run contrary to B&B's own stated position in this case. *See Green*, 281 F.3d at 664 (applying *Younger* abstention even though federal plaintiff was the one who initiated the state lawsuit). The other cases cited by B&B are likewise distinguishable. *See, e.g., Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 650 (7th Cir. 2011) (analyzing appropriateness of *Colorado River* abstention); *SKS*, 619 F.3d at 678 (plaintiff seeking to enjoin state court enforcement of residential eviction rules was not the subject of state enforcement proceeding); *Gen. Auto Serv. Station LLC v. City of Chi.*, 319 F.3d 902, 904-05 (7th Cir. 2003) (plaintiff was not the subject of

an enforcement action and had no state forum in which to raise its arguments); *Hoover v. Wagner*, 47 F.3d 845, 848 (7th Cir. 1995) (plaintiffs filed suit to enjoin law before any state action had been taken against them); *Kendall-Jackson Winery, Ltd. v. Branson*, 82 F. Supp. 2d 844, 857 n.3 (N.D. Ill. 2000) (state proceeding initiated by private parties, and the state had no part in investigating the claims or conducting any fact-findings); *Kafta v. Grady*, No. 12 C 50123, 2012 WL 6061095, at *4 (N.D. Ill. Dec. 6, 2012) (denying abstention where the federal action "will in no way intrude upon the independence of the state courts or their ability to resolve the case involving plaintiff.").

Additionally, B&B argues that *Younger* is inapplicable because it is simply pursuing parallel remedies in state court and is not seeking "an injunction or declaratory judgment that would halt or otherwise interfere with the state court proceeding." (B&B Resp. 5-6.) This is simply incorrect. In its complaint, B&B asks the Court for two alternate forms of injunctive relief: (1) to grant it a hearing before the IGB; or (2) to order the IGB to renew B&B's license. Although B&B may not be asking this Court to enjoin the state court action *per se*, this does not, in and of itself, mean that *Younger* does not apply. Indeed, the Seventh Circuit in *Majors*, 149 F.3d at 712, recognized the appropriateness of abstaining under *Younger* where the plaintiff asked the federal court to order a new administrative hearing or issue a mandatory injunctive reinstating plaintiff's nursing license. Additionally, in *Nelson v. Murphy*, 44 F.3d 497, 501 (7th Cir. 1995), the Seventh Circuit applied *Younger* even where the plaintiff was not requesting an injunction of the state court proceeding, but simply seeking the desired relief in federal court. At bottom, the Seventh Circuit held that "the principal objection is to the transfer of adjudication from the original state forum to the federal forum." *Id.* Here, if the Court grants B&B the relief

8

it seeks, such an order would certainly usurp the state court's authority and potentially moot the state proceeding altogether.

Turning to the second and third elements of the *Younger* analysis, the Court finds that these factors also support abstention. First, there is no question that the regulation of the gaming industry in Illinois constitutes an important state interest. *See Emerald Casino*, 2005 WL 2649195, at *2. Second, under Illinois law, constitutional challenges such as due process and equal protection claims may properly be asserted in a state action seeking administrative review. *See Green*, 281 F.3d at 666-67 (citing *Stykel v. City of Freeport*, 742 N.E.2d 906, 914-15 (Ill. App. Ct. 2001)). Therefore, these two additional elements are satisfied.

Finally, the Court notes that there are no extraordinary circumstances that would require it to forego abstention. For one, the fact that this case was filed one day prior to the state court action does not constitute exceptional circumstances. *See Stroman Realty*, 505 F.3d at 662 (citations omitted) (*Younger* abstention appropriate even "when state proceedings begin after a federal complaint is filed" so long as no substantive events have occurred in the federal action). Here, the one-day delay between filings belies any claim that the federal action has substantially progressed so as to render abstention improper.

B&B's secondary argument that extraordinary circumstances exist because "Illinois state courts inappropriately reject" Seventh Circuit law providing that "a licensee's interest in the renewal of its license is constitutionally protected" (B&B Resp. 7) also is unpersuasive. B&B's dissatisfaction and disagreement with the decisions issued by the Illinois state courts does not qualify as exceptional circumstances and, if anything, B&B's desire to seek a different ruling in a federal forum that effectively would tie the hands of the state court highlights the prudence of abstention here. *See Forty One News, Inc. v. County of Lake*, 491 F.3d 662, 667 (7th Cir. 2007)

9

(noting that plaintiff's preferences and its objections to the earlier adverse rulings of the state courts "carry no weight under *Younger*"). Because there are no exceptional circumstances and the other elements of *Younger* are satisfied, the Court finds that abstention under *Younger* is appropriate in this case.

The Court's conclusion that abstention is warranted is further buttressed by the Seventh Circuit's recent opinion in *SKS*, 619 F.3d 674. There, SKS, a residential real estate management corporation, challenged a General Order of the Cook County Circuit Court, which restricted evictions by the Cook County Sheriff, by filing a federal civil rights lawsuit against the Chief Judge and Sheriff pursuant to 42 U.S.C. § 1983. As part of its lawsuit, SKS asked the federal court to compel the state court to process evictions more quickly. The district court dismissed the case, holding that SKS could pursue state court relief by seeking a writ of mandamus. *Id.* at 676.

On appeal, the Seventh Circuit declined to apply *Younger* abstention because SKS was "not the target of any effort to enforce state law," nor was it a party to the relevant state court eviction actions. *Id.* at 678. The *SKS* court, however, went on to conclude that "the *Younger* doctrine is instructive here because this case implicates the same principles of equity, comity, and federalism that provide the foundation for *Younger* to such an extent that the federal courts must abstain here." *Id.* Accordingly, the Seventh Circuit held that "[f]ederal adjudication of SKS's claims on their merits would reflect a lack of respect for the state's ability to resolve the cases properly before its courts. Adjudication here would thus run contrary to the 'vital' considerations of comity and federalism, and would be inconsistent with 'the traditional reluctance of a federal court to meddle in state court proceedings.'" *Id.* at 679 (quoting *New Orleans Pub. Serv.*, 491 U.S. at 364 and *Pugach v. Dollinger*, 365 U.S. 458, 462 (1961)).

Moreover, the court noted that SKS had failed to demonstrate that it had no adequate remedy under state law, particularly because it had not "attempted to present [its] federal claims in related state-court proceedings," and "a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Id.* (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987)).

Although B&B does not go so far as to ask the Court to specifically compel the state court to adjudicate the state proceeding in a particular manner, the Court similarly concludes that principles of equity, comity, and federalism counsel in favor of abstention in this instance. Here, B&B sought to renew its Terminal Operator License under the Illinois gaming statutes and the rules and regulations promulgated by the state agency specifically entrusted to enforce them. The state agency declined, citing violations of state gaming laws. The parties do not dispute that the regulation of gaming is a significant and important state interest. The parties also do not dispute that any federal constitutional claims that B&B asserts in this case can be equally pressed in the state court proceeding. Allowing B&B to proceed here would "reflect a lack of respect for the state's ability to resolve the cases properly before its courts" and "would be inconsistent with the 'traditional reluctance of a federal court to meddle in state court proceedings.'" *Id.* (citations omitted).

## Conclusion

For all of these reasons, the Court concludes that abstention is proper in this case. Pursuant to the dictates of the Seventh Circuit, the appropriate procedure is to either stay the case pending the resolution of the state court action, or to dismiss it in its entirety. *See FreeEats.com*, 502 F.3d at 600 (citing *Majors*, 149 F.3d at 714). In determining whether to stay or dismiss, the "pivotal question" facing the Court is "whether any of the relief sought by the plaintiff in its federal action is unavailable in the state action." *Id.* Here, B&B seeks declaratory and injunctive relief and asks the Court to either reverse the IGB's denial of its license renewal or, alternatively, instruct the IGB to conduct a hearing with respect to its license renewal. There is no indication that the state court would be incapable of granting such relief. As a result, the Court concludes that dismissal is the appropriate course of action. Defendants' motion to dismiss [dkt. 11] therefore is granted.

Dated: December 4, 2013

John Z. Lee
U.S. District Court Judge